DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Richard Ames, et al., ) | |
| ) | CASE NO. 1:07-CV-03426 |
| Plaintiffs, ) | |
| ) | |
| v. ) | <u>MEMORANDUM OPINION</u> |
| ) | <u>AND ORDER</u> |
| Robert Bosch Corporation, ) | |
| ) | (Resolving Doc. 21) |
| Defendant. ) | |
| ) | |

Before the Court is the plaintiffs' motion for class certification and appointment of class counsel (Doc. 21), defendant's memorandum in opposition (Doc. 25), plaintiffs' reply with supplemental authority (Docs. 27 and 30), plaintiffs' response to this Court's order for an explanation of subclasses (Doc. 33) and defendant's reply (Doc. 34). For the reasons discussed below, the motion is granted.

I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs are retired employees of Robert Bosch Corporation ("defendant" or "Bosch").[1] They worked in various Bosch plants[2] under different collective bargaining agreements ("CBAs") negotiated with different unions.[3] Plaintiffs have retired at different times under

---

[1] Bosch operated automotive component plants.

[2] The plants were in Ashland, Frankfort, and Wooster, Ohio, and Hendersonville, Tennessee.

[3] These included the International Union and the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and their local unions No. 1910 (Ashland, OH), No. 1886 (Frankfort, OH), No. 1239 (Wooster, OH), and No. 2296 (Hendersonville, TN).

different agreements, but all CBAs "guaranteed lifetime post-retirement health insurance benefits" for retirees and surviving spouses (Doc. 21-2, p. 10). This coverage was to continue at no cost to plaintiffs or, in the case of retirees covered by the 2004 CBA at the Wooster, OH plant, to continue at a fixed monthly premium.[4] Plaintiffs claim Bosch unilaterally changed the terms and conditions of their health care benefits notwithstanding language in CBAs and/or closing agreements that assured them of continued, unchanged coverage for their lives.

Plaintiffs bring this action seeking class certification in Ohio.

II.   DISCUSSION

A.   Class Certification

   1.   Proposed Class and Subclasses

Plaintiffs seek to certify a class with three subclasses. The proposed class is:

> All retired employees and surviving spouses of employees who **retired under the terms of the CBAs**, labor contracts and/or benefit plans **between the UAW and Bosch** and its predecessors at the **Ashland, Frankfort, and Wooster, Ohio and Hendersonville,** Tennessee plants, who **were notified in October 2007 of options for the modification** of those benefits.

(Doc. 21-2, p. 10) (emphasis added).

Plaintiffs have also proposed three subclasses.[5] After reviewing the declarations of the

---

[4]The monthly premium under the terms of the Wooster plant's 2004 CBA was $34.92/mo. (Doc. 21-14, p. 2).

[5]The first subclass was all retirees and surviving spouses within the class who retired under CBAs, labor contracts and/or benefit plans at the Ashland and Frankfort, Ohio plants. The second subclass included retirees and surviving spouses within the class who retired under the CBAs, labor contracts and/or benefit plans at the Wooster, Ohio plant. The third subclass included all retirees and surviving spouses within the class who retired under CBAs, labor contracts and/or benefit plans at the Hendersonville, Tennessee plant.

2

proposed class members with attached excerpts of benefit language (Docs. 21-3, 21-6, 21-10, 21-14, 21-17 and 21-20) and the parties' responses to this Court's order for further explanation of subclasses, the Court designates two subclasses. The Court's analysis follows:

Subclass A: No Premium Retirees

These retirees:

(1) were participants in Bosch's (or a Bosch Predecessor) plan that provided for retiree medical benefits; and

(2) were represented by a Union that negotiated a Collective Bargaining Agreement (CBA) in effect at the time of retirement; and

(3) retired from Bosch under a CBA and/or closing agreement with health benefits that required him to pay no premium; and

(4) were notified by Bosch in October 2007 that it was changing the terms of their retirement benefits effective January 1, 2008; and

(5) took no action on a November 15, 2007 mandate to choose among three change-in-benefits options, thus remaining in Bosch's current coverage requiring payment of a monthly premium, subject to unilateral increase by defendant.

Subclass B : Fixed Premium Retirees:

These retirees:

(1) Were participants in Bosch's (or a Bosch Predecessor) plan that provided for retiree medical benefits; and

(2) were represented by a Union that negotiated a Collective Bargaining Agreement (CBA) in effect at the time of retirement; and

(3) retired from Bosch under the January 24, 2004-January 24, 2007 CBA that provided retiree health insurance for $34.92/month; and

(4) were notified by Bosch in October 2007 that it was changing the terms of their retirement benefits effective January 1, 2008; and

(5) took no action on a November 15, 2007 mandate to choose among three

change-in-benefits options, thus remaining in Bosch's current coverage requiring payment of a monthly premium, subject to unilateral increase by defendant.

B.  Subclass Representatives

The proposed class representatives are as follows:

| Subclass | Subclass Representative | CBA and/or Closing Agreement Under Which Retiree Retired | Plant Location and Local Union Number | Premium Due under CBA/Closing Agreement |
|---|---|---|---|---|
| A | Richard Ames | Bosch/UAW Local No. 1910 and No. 2155 November 1, 1999- October 31, 2002 CBA | Ashland Local No. 1910 | No Premium |
| | Ron Francisco | Bosch/UAW Local No. 1910 and No. 2155 November 1, 1999- October 31, 2002 CBA  Bosch/UAW Local No. 1910 Closure Agreement of 2002 | Ashland Local No. 1910 | No Premium |
| | Bruce Rinehart | [Bosch]/UAW Local No. 1886, No. 1910 and No. 2155 September 1995- October 1999 CBA  Bosch/UAW Local No. 1886 Closure Agreement of 1999 | Frankfort Local No. 1886 | No Premium |
| | Lloyd Knight | Bosch/UAW Local No. 2296 July 21, 9997- July 16, 2000 CBA | Hendersonville Local No. 2296 | No Premium |

| Subclass | Subclass Representative | CBA and/or Closing Agreement Under Which Retiree Retired | Plant Location and Local Union Number | Premium Due under CBA/Closing Agreement |
|---|---|---|---|---|
|  | Glenn Kaser | [Bosch]/UAW Local No. 1239 December 11, 1998 CBA | Wooster Local No. 1239 | No Premium |
| B | Ron Rossey | Bosch/UAW Local No. 1239 January 24, 2004 CBA | Wooster Local No. 1239 | $34.92/month |

III.  LAW AND ARGUMENT

Plaintiffs seek to certify the class and its subclasses under Fed. R. Civ. P. 23(a), (b), and (g).

A.  The Rule 23(a) Requirements for Class Certification

Fed. R. Civ. P. 23 provides as follows:

(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Types of Class Actions**. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual

>>class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>>(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
>(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
>>(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>>(D) the likely difficulties in managing a class action.

Under Rule 23, one or more members of a class may sue as representative parties on behalf of all only if all four requirements are met: numerosity, commonality, typicality, and adequacy of representation. The party seeking certification bears the burden of establishing these requirements. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). Once the four conditions are satisfied, "the party seeking certification must also demonstrate that it falls within at least *one* of the subcategories of Rule 23(b)." *Id*. (emphasis in original).

"A court must accept as true the factual allegations contained in the complaint." *In re Revco Securities Litigation*, 142 F.R.D. 659, 662 (N.D. Ohio 1992) (citing *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978)). However, in order to resolve the question of class certification, the court may have to "probe behind the pleadings

before coming to rest on the certification question." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

      1.      Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is "no strict numerical test for determining impracticability of joinder." *American Med. Sys.*, 75 F.3d at 1079. "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone." *Id*. (citing Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS, § 3.05 at 3-26 (3d ed. 1992)). Further, "although it is often possible to certify classes with membership in the thousands and not at all unusual to have classes with membership in the hundreds, it is also clear that conducting litigation joining almost eighty plaintiffs would be extremely impractical." *Thonen v. McNeil-Akron, Inc.,* 661 F. Supp. 1271, 1273 (N.D.Ohio 1986).

Plaintiffs estimate that there are approximately 359 class members (Doc.21-2, p. 14). They argue that with their limited income and financial resources, joinder of plaintiffs is impracticable, difficult and inconvenient (Doc. 21-2, p. 14). Defendant asserts that because 156 retirees subject to the "health care options" did not choose the "no election" option as did plaintiffs, the class size is actually much smaller (numbering 180) (Doc. 25, p. 4). Defendant argues further that sorting retirees into groups by the five CBAs and a closure agreement applicable to Ashland Plant retirees, two CBAs and a settlement agreement applicable to Frankfort, a variety of agreements at Hendersonville and a series of a "dozen of different [CBAs], a closure agreement, and various health care benefit programs" at Wooster leaves the class size even smaller at "a handful" in each category (Doc. 25, p. 4). Given such small groups,

defendant concludes, joinder would be practicable. Defendant argues further that having to consider disparate claims of the retirees of the various CBAs would not serve judicial economy and that the proximity of the retirees to the plants eliminates geographic dispersion as an argument for numerosity.

Defendant also argues additional factors against numerosity but, like the previous arguments, they are not persuasive.[6] Regardless of the language of the individual CBAs and closure agreements, the putative class members were promised benefits for life without change. Defendant unilaterally changed the terms of the agreements, negatively affecting all class members. That group numbered either 336 (defendant's calculation) or 359 (plaintiffs'). Even assuming, as defendant argues, that the putative class is comprised of only the 180 members who made "no election," that number is sufficient to find numerosity in this case. *American Med. Sys.*, 75 F.3d at 1079. Courts have found that joining even 80 plaintiffs would be "extremely impracticable." *Thonen v. McNeil-Akron, Inc.,* 661 F. Supp. at 1273. The Court adopts that reasoning in this case and finds that plaintiffs have satisfied the numerosity requirement.

2.  Commonality

Although Rule 23(a)(2) requires that there be "questions of law or fact common to the class," every question of law or fact need not be common to each class member. *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56-57 (3d Cir. 1994); *Moore v. Rohm & Haas Co.*, 43 Employee Benefits Cas. 1337, 1342 (N.D.Ohio Nov. 19, 2007). In fact, "[t]he commonality test,

---

[6]Specifically, defendant also argues that plaintiffs have offered no support for limited financial resources, that the names/addresses of all potential class members are known and that there is no issue of any future request for injunctive relief as the class is a frozen, finite group (Doc. 25, p. 5).

is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *American Med. Sys.*, 75 F.3d at 1080 (citing 1 NEWBERG, *supra*, § 3-10 at 3.50) *See also Prater v. Ohio Educ. Ass'n.*, No. C2 04 1077, 2008 WL 2566364, at *3 (S.D.Ohio June 26, 2008) (finding that even a single common question of law or fact will satisfy the commonality requirement).

Plaintiffs assert that the common issue in this case is retiree health benefits and that courts have found that simply *a* common issue, such as the issue of vested benefits for retirees, to be sufficiently common even if there are fact differences. *Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 884 (6th Cir. 1997).[7] Further, plaintiffs argue, there are four issues of law and fact common to all class members in this case regarding: 1) whether the class member retired from Bosch under a CBA between Bosch and the UAW, 2) whether the CBA obligated Bosch to provide retiree health benefits for life, 3) whether Bosch's actions modifying the retiree health benefits is a breach of the CBA under the [LMRA], and 4) whether Bosch's modification violates fiduciary duties under ERISA (Doc. 21-2, pp. 15-16).

Defendant argues that the number of different contracts governing the claims of the retirees destroys commonality. As support, defendant cites *Sprague v. General Motors Corp.,* 133 F.3d 388, 398 (6th Cir. 1998) in which the Court found that myriad variations in different contracts governing the claims negated a finding of commonality.

Here, Bosch promised all plaintiffs retirement health benefits at no cost (or a fixed cost). Regardless of the different language of the individual plans, the promise of unchanged health

---

[7]Plaintiff cites a Western District of New York case to support that commonality can be found in such a case even if there are multiple CBAs at issue. *Halford v. Goodyear Tire & Rubber Co.,* 161 F.R.D. 13 (W.D.N.Y 1995).

benefits is common to all the class members. *American Med. Sys.*, 75 F.3d at 1080 (citing 1 NEWBERG, *supra*, § 3-10 at 3.50). Defendant's argument regarding multiple CBAs in *Sprague, supra,* is defeated by *Bittinger v. Tecumseh Products Co., supra,* at 884. In that case the Sixth Circuit stated that commonality was satisfied despite multiple CBAs since "each class member claims that the original [CBA] guaranteed them lifetime, fully-funded benefits." *Id.* Likewise, in this case, despite a premium at one plant, the essential legal question is the same; entitlement to unchanged health benefits for life.

The Court finds that the commonality requirement is satisfied.

3. Typicality

Although "[t]he commonality and typicality requirements of Rule 23(a) tend to merge[,]" *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998), the typicality requirement of Rule 23(a) is specifically intended to assure that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In the Sixth Circuit, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976). The typicality requirement assures "that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *American Med. Sys.*, 75 F.3d at 1082.

In this case, plaintiffs argue that the named representatives, like the unnamed class members, all participated Bosch's retiree health benefits plan and are subject to Bosch's unilateral modification to the benefits. Plaintiffs assert that this establishes typicality despite any difference in the degree of individual suffering because the focus of the typicality analysis is on

the liability, not the ultimate ability to recover. *Iron Workers Local Union v. Philip Morris Inc.,* 182 F.R.D. 523, 531 (N.D. Ohio 1998); *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992).

Defendant asserts that typicality is defeated because not one of the plaintiffs made an election under the health care options or is a spouse of a covered worker. Determining plaintiffs' claims, defendant argues, would not resolve the "vast majority" of the claims of the remaining retirees. (Doc. 25, p. 8). Defendant relies on *Sprague, supra,* as support as that case held that the typicality requirement was not met where the facts required to prove the claims were markedly different between class members. *Id.,* 133 F.3d at 399; *accord Spencer v. Central States, Se. & Sw. Areas Pension Fund*, 778 F.Supp. 985, 990 (N.D. Ill. 1991).

In this matter, Plaintiffs are all retired workers promised a lifetime of health benefits under CBAs negotiated with Bosch; benefits that Bosch unilaterally modified. The Court finds that their interests are sufficiently aligned with the represented group. *American Med. Sys.*, 75 F.3d at 1082. The plaintiffs have satisfied the typicality requirement.

   4.  Adequacy of Representation

The final prerequisite to class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).

> Class representatives are adequate when it "appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel," *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir.1976), which usually will be the case if the representatives are "part of the class and possess the same interest and suffer the same injury as the class members," *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (internal quotation marks omitted). Because named class members must act through class counsel, adequacy of representation turns in part on "the competency of class counsel" and in part on the absence of "conflicts of interest." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see*

Fed.R.Civ.P. 23(g)(1)(c).

*International Union, United Auto., Aerospace, and Agr. Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007).  In *Cross v. National Trust Life Insurance Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977), the court held: "[i]n making the determination of adequacy of representation the district court should consider the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."

Plaintiffs assert that the named representatives and the unnamed representatives share a stake in whether Bosch's action unilaterally modifying the benefits will be permitted, eliminating any issue of antagonism.  *Cross v. National Trust Life*, *supra*.  Further, they have pledged in sworn statements[8] to vigorously pursue the interests of the class.  *International Union*, *supra*.  The balance of Plaintiffs' arguments likewise supports adequacy.

The Court finds that the plaintiffs have satisfied the adequacy prerequisite.

B.     The Rule 23(b) Requirements for Class Certification

In addition to meeting the four requirements of Rule 23(a), Plaintiffs must also

---

[8] Docs. 21-3, 21-6, 21-10, 21-14, 21-17 and 21-20.

12

demonstrate that the certification falls within at least one of the subcategories of Rule 23(b).[9]

Plaintiffs seek class certification pursuant to Rule 23(b)(1)(A).[10] They argue that prosecuting 359 individual actions in this matter would create a risk of inconsistent or varying

---

[9]Rule 23(b) provides that "A class action may be maintained may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action."

[10]Plaintiffs also assert arguments for class certification under Rule 23(b)(2) allowing class certification when defendant's actions apply to the entire class. The Court will not conduct an analysis of plaintiffs argument under Rule 23(b)(2) since it is granting class certification under Rule 23(b)(1).

13

adjudications (Doc. 21-2, p. 21).

Defendant argues that plaintiff has merely argued that one party may prevail and another may not; an insufficient showing to maintain the burden under the Rule. *Jones v. American Gen. Life & Accident Ins. Co.,* 213 F.R.D. 689, 697-98 (S.D.Ga. 2002). The Court disagrees.

The Court finds that plaintiffs would risk varying adjudications if they went forward individually with their suits. Rule 23(b)(1)(A). Therefore, the Court concludes that plaintiffs have met the requirements of a class.

C. The Rule 23(g) Requirements: Appointing Class Counsel

Rule 23(g) requires that the Court appoint class counsel. Rule 23(g) states, in pertinent part:

> (1) **Appointing Class Counsel**. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:
>
> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class; . . .
>
> . . .
>
> (2) **Standard for Appointing Class Counsel.** When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the

14

>> interests of the class.
>
> . . .
>
> (4) **Duty of Class Counsel.** Class counsel must fairly and adequately represent the interests of the class.

Plaintiffs' counsel Frederick G. Cloppert, Jr. has submitted an affidavit declaring his competence under Rule 23(g). Specifically, Cloppert declares that he has "directed and supervised" this litigation on behalf of plaintiffs since October 2007 and that he has extensive experience litigating ERISA and LMRA class action cases. (Doc. 21-22). Cloppert identifies numerous such cases with which he has been involved as counsel and testifies that he will devote the "full resources" of his 10-attorney firm to represent plaintiffs. (Doc. 21-22).

The Court finds that Cloppert has adequately demonstrated that he has done the work investigating the claims and has the requisite experience required by Rule 23(g)(A)(i) and (ii). The Court finds further that his experience in 15 previous union and/or retiree benefits cases shows he has the requisite knowledge of the applicable law. Rule 23(g)(A)(iii). Cloppert has also declared the commitment of his entire firm to support the prosecution of plaintiffs claims. Rule 23(g)(A)(iv). This commitment persuades the Court that Cloppert will fairly and adequately represent the class as required by Rule 23(g)(4).

Therefore, the Court finds that Cloppert is qualified under Rule 23(g) and hereby appoints him to represent the interests of the class.

IV. CONCLUSION

The court hereby certifies a Rule 23(b)(1) Class, with Subclasses A and B as indicated.

IT IS SO ORDERED.

March 24, 2009                                   /s/ David D. Dowd, Jr.

Date                                            David D. Dowd, Jr.

                                                U.S. District Judge